### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MAISOUN LABANEYA, et al.,**

|  |  |
|---|---|
| **Plaintiffs,** | **No. 12-cv-15506** |
| **vs.** | **Hon. Gerald E. Rosen** |

**UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, DETROIT
DISTRICT DIRECTOR, et al.,**

**Defendants.**
_____/

### OPINION AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND <u>ORDER TO SHOW CAUSE</u>

### I. <u>INTRODUCTION</u>

On March 26, 2009, Maisoun Labaneya filed a Petition for Alien Relative ("Form I-130") for her husband Radwan Baytiyeh with the United States Citizenship and Immigration Services ("USCIS"). Concurrently, Mr. Baytiyeh filed an application for Adjustment of Status ("Form I-485") to become a permanent resident. When these matters were not adjudicated by December 17, 2012, Plaintiffs commenced this suit requesting a writ of mandamus ordering Defendants to process their applications within sixty days. Defendants have responded to Plaintiffs' complaint by filing a  motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

Having reviewed and considered Defendants' motion, the briefs filed by the parties in support of, and in opposition to, the motion, and the exhibits accompanying those briefs, the Court has determined that the relevant allegations, facts, and legal arguments are adequately presented in these submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide this matter "on the briefs." *See* Eastern District of Michigan Local Rule 7.1(f)(2).  This Opinion and Order sets forth the Court's ruling.

## II.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiffs Maisoun Labaneya, a native of Syria, and Radwan Baytiyeh, a native of Lebanon, have been married for over 25 years.  They were admitted to the United States in January 1990 as J-1 non-immigrants. The couple has lived in the United States for over 20 years. They have four children, all of whom were born in the United States and are U.S. citizens.

In 2002, Mrs. Labaneya won a spot in the Diversity Visa Lottery for fiscal year 2003. Thereafter, in order to adjust her nonimmigrant status, she filed a Form I-485, on December 16 2002, and was granted lawful permanent resident status in September of 2003.  In 2009, she became a naturalized United States citizen.

Mr. Baytiyeh also filed a Form I-485 at the same time as his wife, but because USCIS could not complete his background check by the close of the fiscal year, it was required by statute to deny his application. *See* 8 U.S.C. § 1154(a)(1)(I)(ii)(II).

2

On March 26, 2009, Mrs. Labaneya filed a Form I-130 with USCIS to classify Mr. Baytiyeh as an immediate relative in order for him to obtain a visa. Concurrently, Mr. Baytiyeh filed a new Form I-485 Application for Adjustment of Status. Both filings remained unadjudicated on December 17, 2012 when Plaintiffs commenced this suit.

In their Complaint, Plaintiffs allege violations of the Administrative Procedures Act ("APA"), Immigration and Nationality Act ("INA"), and the Due Process Clause of the Fifth Amendment, all stemming from USCIS's alleged failure to adjudicate the two forms. As relief, they are requesting a writ of mandamus ordering Defendants to process both forms within 60 days, as well as attorney's fees and costs.  Plaintiffs name as defendants in this matter Alejandro Mayorkas, Mick Dedvukaj, and Janet Napolitano, all federal employees being sued in their official capacities. Mr. Mayorkas is the duly appointed Director of USCIS, the agency responsible for adjudicating I-130 and I-485 forms. Mr. Dedvukaj is the Detroit District Director of USCIS, and his agency is responsible for deciding I-130 and I-485 forms filed within the Detroit, Michigan district. Mrs. Napolitano is the Secretary of the Department of Homeland Security ("DHS"). USCIS is an agency within, and under control of, the DHS.

In lieu of filing an Answer to Plaintiffs' Complaint, Defendants filed a motion to dismiss. In their motion, Defendants first argue  that dismissal of the claim based on the I-130 form is proper because the form was adjudicated after this suit commenced. Plaintiffs do not dispute that since their I-130 form has been adjudicated their claim based on the I-130 form has been rendered moot.

3

With regard to Plaintiffs' claim based on the Form I-485, Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), arguing that the Court lacks subject matter jurisdiction and that Plaintiffs have failed to state a claim upon which relief can be granted.

### III. <u>DISCUSSION</u>

### A. <u>APPLICABLE STANDARDS</u>

When faced with a question of subject matter jurisdiction, the Court must address that issue before all others. *Gross v. Hougland*, 712 F. 2d 1034 (6th Cir. 1983); *Moir v. Greater Cleveland Reg'l Transit Auth*., 895 F. 2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("The Court will consider the 12(b)(1) motion first, as the 12(b)(6) challenge becomes moot if subject matter jurisdiction is lacking."). There are two categories of motions to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) -- facial attacks and factual attacks. *United States v. Ritchie*, 15 F. 3d 592, 598 (6th Cir. 1994). A facial attack challenges the court's subject matter jurisdiction based upon the sufficiency of the pleadings. In considering a "facial attack," a court will consider the material allegations of fact set forth in the complaint as being true and construe them in a light most favorable to the nonmoving party. *United States v. Ritchie*, 15 F.3d at 598. A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. *Ritchie, supra*. On such a motion, no presumptive truthfulness applies to the factual allegations, *see Ohio Nat'l Life Ins. Co. v. United States*, 922 F. 2d 320, 325 (6th

Cir. 1990), and the court is free to weigh the evidence and satisfy itself as to the existence

of its power to hear the case. *Ritchie, supra.* The plaintiff bears the burden of

establishing subject matter jurisdiction by a preponderance of the evidence. *Moir*, 895 F.

2d at 269.

**B.    FORM I-485 AND JURISDICTION:  AN UNSETTLED POINT OF LAW**

Plaintiffs argue that subject matter jurisdiction is found under 28 U.S.C. § 1331

(federal question statute), 28 U.S.C. § 1361 (the Mandamus Act), 5 U.S.C. §§ 702, and

704 (the Administrative Procedures Act), and 28 U.S.C. §§ 2201 and 2202 (the

Declaratory Judgment Act). First, the Declaratory Judgment Act does not provide an

independent basis for subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*,

339 U.S. 667, 671-72 (1950). Prior to invoking the Declaratory Judgment Act, a federal

court must have jurisdiction under another federal statute. *Toledo v. Jackson*, 485 F.3d

836, 839 (6th Cir. 2007). Similarly, the federal question statute, 28 U.S.C. § 1331, does

not provide an independent source for subject matter jurisdiction, as the statute only

confers jurisdiction in cases arising under the Constitution and laws of the United States.

28 U.S.C. § 1331. Accordingly, subject matter jurisdiction only exists if it is granted by

the Mandamus Act or the APA.  *See, Toledo v. Jackson*, 485 F. 3d 836, 839 (6th Cir.

2007)); *Shen v. Chertoff*, 494 F. Supp. 2d 592, 594 (E.D. Mich. 2007); , *Maftoun v.

Chavez*, 2007 WL 3202850 at *2 (E.D. Mich. Oct. 31, 2007).

**1.    Jurisdiction Under the Mandamus Act and the APA**

Under the Mandamus Act, a district court has the authority to "compel an officer

5

or employee of the U.S. or any agency thereof to perform a duty owed to the plaintiff."
28 U.S.C. § 1361.  Mandamus relief is a "drastic and extraordinary remedy" that is "only
to be reserved for extraordinary situations." *Cheney v. U.S. Dist. Court for the Dist. of
Columbia*, 542 U.S. 367, 380 (2004). The relief afforded by a writ of mandamus cannot
be used to "compel or control a duty in the discharge of which by law [a federal officer]
is given discretion" and is only appropriate where petitioner has exhausted all
administrative remedies and defendant official owes petitioner a clear and
nondiscretionary duty. *Work v. United States ex rel. Rives*, 267 U.S. 175, 177-78
(1925); *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

Under the APA, an agency has a duty to conclude a matter presented to it within
a "reasonable time." 5 U.S.C. §555(b). The APA allows a court to "compel agency
action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, the
APA does not apply where the statute at issue "precludes judicial review" or the "agency
action is committed to agency discretion by law." 5 U.S.C. § 701(a).

District courts across the country are split on whether the Mandamus Act and/or
the APA afford subject matter jurisdiction over claims that USCIS failed to adjudicate, or
is unreasonably delayed in adjudicating, a Form I-485. *Compare Qiu v. Chertoff*, 486 F.
Supp. 2d 412 (D. N.J. 2007); *Li v. Chertoff*, 482 F. Supp. 2d 1172 (S.D. Cal. 2007);
*Rogatch v. Chertoff*,  2007 WL 1160358 (D. R.I. Apr. 17, 2007); *and Mustafa v.
Pasquerell*, 2006 WL 488399 (W.D. Tex. Jan. 10, 2006) (all finding a lack of subject
matter jurisdiction to compel immigration officers to adjudicate the Form I-485), *with*

*Kashkool v. Chertoff*, 553 F. Supp. 2d 1131 (D. Ariz. 2008); *Linville v. Barrows*, 489 F. Supp. 2d 1278 (W.D. Okla. 2007); *Kim v. Ashcroft*, 340 F. Supp. 2d 384 (S.D. N.Y. 2004); *Bemba v. Holder*, 2013 WL 943653 (E.D. Mo. Mar. 11, 2013); *and Irshad v. Napolitano*, 2012 WL 4593391 (D. Neb. Oct. 2, 2012) (all finding subject matter jurisdiction exists).

A similar split exists among district courts within the Sixth Circuit. *Compare, e.g.*, *Kobaivanova v. Hansen*, 2011 WL 4401687 (N.D. Ohio Sept. 16, 2011) (finding subject matter jurisdiction), *with Xu v. Gonzales*, 2007 WL 2815449 (S.D. Ohio Sept 25, 2007) (finding a lack of subject matter jurisdiction). In the Eastern District of Michigan, however, all but one of the judges who have considered the issue have held that the district court lacks subject matter jurisdiction.[1]

The Sixth Circuit Court of Appeals has not yet settled this split amongst the district courts. And, nationwide, the only the federal appellate court to directly address the issue is the Fifth Circuit, which found that:

> [T]he district court lacked jurisdiction to consider [plaintiff's] claim, as Congress has expressly precluded judicial review of the USCIS's pace of adjudication when the agency acts within its discretion and pursuant to the regulations that the agency deems necessary for carrying out its statutory grant of authority.

---

[1] In all, eleven Eastern District of Michigan judges have found a lack of subject matter jurisdiction.

*Bian v. Clinton*, 605 F. 3d 249, 255 (5th Cir. 2010) *vacating as moot*, 09-10568, 2010 WL 3633770 (5th Cir. Sept. 16, 2010).[2]

The issue dividing these courts is how much discretion USCIS has in the Form I-485 adjudication process. This issue is dispositive because the Mandamus Act, APA, and INA all prohibit judicial review of discretionary agency action. As indicated above, the Mandamus Act "cannot be used to compel or control a duty in the discharge of which by law a federal officer is given discretion and is only appropriate where [. . .] defendant official owes petitioner a clear and nondiscretionary duty." *Maftoum*, *supra*, 2007 WL 3203850 at *3 (citing *Work v. United States ex rel. Rives*, 267 U.S. 175, 177-78 (1925); *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)) (internal quotation and alteration omitted). The APA similarly prohibits judicial review of agency action "committed to agency discretion by law." 5 U.S.C. § 701(a). Section 245 of the INA, codified at 8 U.S.C. § 1255(a), declares that "[t]he status of an alien who was inspected and admitted or paroled into the United States [. . .] may be adjusted by the Attorney General, *in his discretion* and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(a) (emphasis added).[3] Additionally, the INA

---

[2] *Bian*, however, relies heavily on the fact that the plaintiff's application was being delayed because she did not have a visa available to her, as is required by statute. 8 U.S.C. § 1255(a)(3).  Here, there is no issue as to Mr. Baytiyeh's visa.

[3] While the text of 8 U.S.C. § 1255(a) refers to the Attorney General, since the enactment of that statute, the authority to adjudicate Form I-485s has been transferred to the Secretary of Homeland Security and her delegates in USCIS. *See* 6 U.S.C. § 271(b)(5); 6 U.S.C. § 557.

denies courts the jurisdiction to review "[A]ny [. . .] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter *to be in the discretion* of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). Therefore, if a court determines that the pace of adjudicating a Form I-485 is within the discretion granted by § 1255(a), then it lacks jurisdiction to review that pace under § 1252(a)(2)(B)(ii), the APA and the Mandamus Act.

**2.**      **_Seydi v. United States Citizenship and Immigration Services_**

This case is not the first Form I-485 "pace of adjudication" case to come before this Court. In *Seydi v. United States Citizenship and Immigration Services*, 779 F. Supp 714 (E.D. Mich. 2011), the plaintiff asked this Court to issue a mandamus ordering USCIS to adjudicate his Form I-485. Seydi was a refugee who was granted asylum in 2004. He filed a Form I-485 in November of 2005 to gain permanent resident status, and filed suit in March of 2010 when his application had still not been adjudicated. This Court held that it did not have subject matter jurisdiction to review the case. However, *Seydi* presented materially different circumstances from the circumstances presented in the instant case.

In *Seydi*, this Court noted that the disposition of Plaintiff's I-485 application had been impacted by then recent developments in the law. *Id.* at 716. Specifically, the Court noted that "in the Consolidated Appropriations Act of 2008 ("CAA") [. . .] the Secretary of the DHS was given additional discretionary authority to grant exemptions from the

terrorist-related inadmissibility grounds relating to 'Tier III' terrorist organizations." *Id.*
at 716-17 (internal citations omitted) (parenthetical added). "In light of this enactment,
the Deputy Director of USCIS issued a policy memorandum [. . .] directing adjudicators
to withhold their decisions in cases where the applicants might benefit from the expanded
discretionary authority granted to the Secretary." *Id.* at 717. Because Seydi "provided
material support to the Mouvement des Forces Democratiques de la Casamance, an
organization that meets the definition of a 'Tier III' terrorist organization[,]" his
application was "held in abeyance." *Id.*  In finding a lack of subject matter jurisdiction in
*Seydi*, this Court noted that it would be "incongruous to, on the one hand, insist that
Defendants act promptly to adjudicate an application that can only succeed through the
exercise of the Secretary's discretionary authority, while at the same time advancing a
theory of subject matter jurisdiction that disavows the notion that the Secretary has been
called upon to exercise her discretionary authority." *Id.* at 720.

        Further, in deciding *Seydi*, this Court relied heavily on *Singh v. Napolitano*, 710 F.
Supp. 2d 123 (D.D.C. 2010), a case with strikingly similar facts to *Seydi*. Just as in *Seydi*,
the applicant in *Singh* was found to have provided material support to terrorist
organizations, and so his application was being held in abeyance. This Court agreed with
the *Singh* court's reasoning that "the decision to hold an application in abeyance was
encompassed within the Secretary's discretionary power to promulgate regulations that
she feels are necessary to exercise her authority to grant permanent resident status to an
asylee[,]" (citing 8 U.S.C. § 1159(b)), and that "the Secretary's decision to hold plaintiff

Singh's application in abeyance qualified as an "action" within the meaning of § 1252(a)(2)(B)(ii)[,]" *Seydi*, 779 F. Supp at 718, this Court was "persuaded by [. . .] *Singh* under [. . . ] similar facts." *Id.* at 720.

Here, there is nothing suggesting that Mr. Baytiyeh was involved in any terrorist organization or that he provided material support to terrorists. Therefore, the Court believes it is necessary to address the issues in this case anew. Accordingly, the Court has reviewed the applicable cases from around the country and within in the Sixth Circuit to determine which set of cases is better reasoned -- those finding that subject matter jurisdiction exists, or those finding that it does not.

## 3.    Courts Finding Subject Matter Jurisdiction

Courts finding that the discretion granted by 8 U.S.C. § 1255(a) does *not* extend to the pace of adjudication -- or to the pace of adjudication past a certain point -- follow a substantially similar reasoning. These courts find that USCIS's discretion does not extend to the decision of *whether* to process an application -- in other words, that USCIS cannot decide to simply abandon an application. *See e.g.*, *Irshad*, 2012 WL 4593391 at *5 ("I see no indication that the USCIS has the discretion to refuse to resolve the applications placed before it, or to delay its decisions indefinitely."); *Kim*, 340 F. Supp. 2d at 389 ("Whether to adjudicate an adjustment application is not discretionary.").

In reaching this conclusion, the courts relied upon the presumption favoring judicial review of administrative action. The court in *Irshad* noted that the "presumption that favors judicial review on administrative action" means that § 1252(a)(2)(B)(ii) limits

11

judicial review only "when Congress has expressed precisely that a particular decision is discretionary." 2012 WL 4593391 at *5 (internal quotations omitted); *see also Kashkool*, 553 F. Supp 2d 1131, 37-38 (noting "the strong presumption in favor of judicial review of agency actions" and concluding that "the mere absence of a statutory time limit [to adjudicate Form I-485s] is insufficient evidence of Congress' intent to preclude judicial review"). Courts following this line of reasoning have also looked to the regulations of the INA and determined that they were drafted "on the assumption that defendant *will* decide each application." *Saleem v. Keisler*, 520 F. Supp. 2d 1048, 1054 (W.D. Wisc. 2007) (citing, for example, 8 C.F.R. § 245.2 "the applicant shall be notified of the decision of the director") (emphasis in original).

From there, these courts have found it apparent that "on a practical level" if USCIS must decide applications, but has "unfettered discretion to put off deciding an application for as long as they want" then their non-discretionary duty to decide the application is judicially unenforceable. *Saleem*, 520 F. Supp. 2d at 1055; *see also Bemba*, 2013 WL 943653 at *5 (noting that "[other courts] have concluded that because the USCIS has a nondiscretionary duty to render a decision, courts must have jurisdiction in a mandamus suit alleging that the USCIS failed to adjudicate an application within a reasonable period of time, or else the USCIS could indefinitely delay rendering a decision.")

After finding subject matter jurisdiction to review the pace of adjudication, the courts then used 5 U.S.C. § 706 to determine whether to issue a mandamus. The statute

states that a reviewing court shall "(1) compel agency action unlawfully withheld or *unreasonably delayed*."[4] 5 U.S.C. § 706 (emphasis added). In *Saleem*, after finding subject matter jurisdiction, the court found that "[T]he APA itself provides the appropriate standard of review ("unreasonable delay")." 520 F. Supp. 2d at 1057 (parenthetical in original). In *Kobaivanova v. Hansen*, 2011 WL 4401687 (N.D. Ohio Sept. 16, 2011), the court similarly found subject matter jurisdiction, and then applied § 706's "unreasonably delayed" standard.[5] Ultimately, both of these courts found that "a three year delay was not unreasonable on its face" and that the "[p]laintiff ha[d] not alleged any facts to suggest that her [Form I-485] has been unreasonably delayed. *Id.* at *6.

To summarize, courts finding subject matter jurisdiction typically reach the following three conclusions: (i) USCIS does not have the discretion to decide whether to

---

[4] 5 U.S.C. § 701 limits § 706 by exempting "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Since these courts had already determined that USCIS does not enjoy unfettered discretion to determine the pace of adjudication, § 701 does not preclude these courts from applying § 706 to the INA.

[5] The court in *Kobaivanova* also references 5 U.S.C. § 555(b) to support its finding of subject matter jurisdiction; a move other courts have made, and one which Plaintiffs ask this Court to make, as well. However, the Court finds reliance on this section to be misplaced. That section has often been cited out of context, with courts referring only to the line "within a reasonable time, each agency shall proceed to conclude a matter presented to it." In the context of Section 555(b) and within Section 555 as a whole, it is apparent to the Court that the oft-quoted line refers to the manner in which administrative agencies must resolve complaints and disputes brought by individuals through administrative remedy processes, and not the manner in which they must fulfill their normal administrative duties (such as processing a Form I-485).

adjudicate a Form I-485; (ii) Given this conclusion, courts must have the power of judicial review over the pace of adjudication; (iii) Mandamus is proper when the Form I-485 adjudication process is unreasonably delayed.

### 4.   Courts Finding a Lack of Subject Matter Jurisdiction

On the other hand, courts finding a lack of subject matter jurisdiction typically conclude that the grant of discretion in 8 U.S.C. § 1255(a) encompasses the entire adjudication process, which in large part consists of security and background checks.[6] *See e.g.*, *Safadi v. Howard*, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006) (finding that the prohibition on judicial review of discretionary actions in 8 U.S.C. § 1252(a)(2)(B)(ii) includes "the completion of background and security checks and the pace at which the process proceeds."); *Shen*, 494 F. Supp. 2d at 597("[T]he adjudication of a [Form I-485] is governed by agency discretion. Although the Court may sympathize with Plaintiff, the Court cannot order Defendants to adjudicate an application before a name check returns.") (internal parenthetical omitted). This conclusion is based in part on the fact that the pace of the background checks is often effected by the overwhelming number of checks that the FBI must process. *Id.* ("In fact, the FBI is currently processing Plaintiff's name check, along with 14,491 other name checks."); *Maftoum*, 2007 WL 3203850 at *4

---

[6]"When an alien applies for adjustment of status, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for the immigration benefit and is not a risk to national security or public safety. [. . .] These background checks currently include (1) a [FBI] fingerprint check for relevant criminal history records on the alien; (2) a check against the DHS-managed Interagency Border Inspection System (IBIS) [. . .]; and (3) an FBI name check." *See* Declaration of Senior Immigration Services Officer Jovana Gjelaj, Defendants' Ex. 2, ¶ 7.

("The delay in processing Plaintiff's application appears to stem, at least in part, from the FBI's struggle to process large numbers of name check requests with limited resources.").

Courts finding a lack of subject matter jurisdiction also find the opposite conclusion to be untenable with national security concerns. *Shen*, 494 F. Supp. 2d at 597 ("[T]he Court believe that such interference could hamper the investigations necessary to ensure our national security."); *Safadi*, 466 F. Supp. 2d at 701 ("Our national security requires that caution and thoroughness in these matters not be sacrificed for the purpose of expediency."). These courts are also mindful of the deference owed to the other branches of government in immigration policy matters. *Xu*, 2007 WL 2815449 at *6 ("The Congress of the United States has the power to [. . .] prescribe the terms and conditions upon which aliens may come to this country. Further, Congress may have its policy regarding aliens enforced exclusively through executive officers without judicial intervention.") (internal citation omitted); *Maftoum*, 2007 WL 3203850 at *4 ("[I]mposing upon Defendants a deadline by which they must complete their adjudication is a policy determination more appropriately taken by the executive and legislative branches, not the courts.")

Additionally, nearly every opinion finding discretion which this Court has read relies on the fact that neither the applicable statutes nor regulations stipulate a specific time limitation for adjudicating a Form I-485. *See, e.g.*, *Korobkova v. Jenifer*, 2007 WL 3245178 at *2 (E.D. Mich. Nov. 2, 2007) ("Noticeably absent [. . .] is any language setting forth a time limit within which a decision to adjust the status must be made."); *Ma*

15

*v. Rice*, 2009 WL 160288 at *6 (E.D. Mich. Jan. 22, 2009) ("There is no statute or

regulation that imposes on the USCIS a time deadline for the processing of I-485

application."); *see also Kobaivanova*, 2011 WL 4401687 at *4 (noting that many of the

courts finding discretion throughout the adjudicatory process "have concluded that the

lack of a specific time limitation in the statute reflects Congressional intent to leave the

entire adjudicatory process to the agency's discretion.") Some courts have found that the

absence of a time limitation is evidence of Congress' intent to give USCIS discretion

over the pace of adjudication in light of other immigration applications which include a

time limitation. *E.g.*, *Maftoum*, 2007 WL 3203850 at *4 ("That Congress has not

provided a similar [time period] with respect to adjustment of status applications lends

support to the court's present holding.")

Finally, some courts have found that the Secretary's discretion extends beyond just

the pace of adjudication, and to the decision whether to adjudicate a Form I-485 at all.

*See e.g.*, *Shen*, 494 F. Supp. 2d at 595 ("The Court finds that the USCIS does not have a

nondiscretionary duty to process I-485 applications."); *Chebab v. Chertoff*, 2007 WL

2372356 (E.D. Mich. Aug. 17, 2007) (finding that 8 C.F.R. § 103.2(b)(18), a USCIS

regulation, "permits immigration officials to withhold adjudication [. . .] indefinitely

pending investigation."). Others, on the other hand, have suggested that discretion may

not extend that far. *See Ma*, 2009 WL 160288 at *6; *Xu*, 2007 WL 2815449 at *5; (both

finding that USCIS has discretion over the pace of adjudication, but in *dicta,* suggesting

that taking no action or refusing to act on an application would be outside of the

Secretary's discretion); *see also Safadi*, 466 F. Supp. 2d at 700 ("[N]ot addressed here is the question whether jurisdiction would exist in a district court to review plaintiff's case where USCIS refused altogether to process an adjustment application or where the delay was so unreasonable as to be tantamount to a refusal to process the application.").

## C.   DEFENDANTS' 12(b)(1) MOTION

After undertaking an extensive review of the above-discussed cases, the Court finds that it agrees with those courts finding that the grant of discretion in 8 U.S.C. § 1255(a) encompasses the entire adjudication process, including the pace of adjudication. The plain language of § 1255(a) commands this conclusion. "The status of an alien who was inspected and admitted or paroled into the United States [. . .] may be adjusted by the Attorney General, *in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(a) (emphasis added). The emphasized clause makes it clear that the statute grants discretion over both the adjustment of an alien's status, and the process by which their status may be adjusted. In other words, the power to prescribe regulations constitutes a grant of discretion over the process by which applications for adjustment of status are adjudicated. This discretion necessarily includes pace of this process. Otherwise, the grant of discretion would be illusory, given that courts could drastically alter the regulations prescribed by dictating what pace of adjudication the regulations must permit.

However, the Court also agrees with those courts concluding that the INA and the implementing regulations impose a duty upon the USCIS to adjudicate all properly filed

17

applications. *Zalmout v. Gonzalez*, 2007 WL 3121532 at *2 (E.D. Mich. Oct. 24, 2007) (citing *Cao v. Upchurch*, 496 F. Supp. 2d 569, 575-76 (E.D. Pa. 2007) (collecting cases)). "Whether to adjudicate an adjustment application is not discretionary." *Kim v. Ashcroft*, 340 F. Supp. 2d at 389; *see also Irshad v. Napolitano*, 2012 WL 4593391 at *5 ("I find no indication that the USCIS has the discretion to refuse to resolve the applications placed before it, or to delay its decisions indefinitely.")

However, the discretion granted USCIS here is not completely unbridled such as to make its other obligations under the law a nullity. As the court in *Safadi* suggested, a delay in processing an adjustment of status may be so unreasonable that it is tantamount to a refusal to process the application. *Safadi*, 466 F. Supp. 2d at 700; *Kim,* 340 F. Supp. 2d at 399 ("[T]he CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely." ); *Zalmout, supra* ("At some point, Defendants' delay in adjudicating an adjustment of status application will suggest that they have abandoned their duty to process the application."); *see also Ma v.Rice*, 2009 WL 160288 at *6; *Xu v. Gonzales*, 2007 WL 2815449 at *5; (both finding that USCIS has discretion over the pace of adjudication, but suggesting that taking no action or refusing to act on an application would be outside of the Secretary's discretion).

In this case, Mr. Baytiyeh's I-485 application for Adjustment of Status has been pending for more than four years. The only explanation for the four-year delay provided by Defendants is that offered in the Declaration of Jovana Gjelaj, a Senior Immigration Services Officer stationed in the Detroit Office of the USCIS. Ms. Gjelaj's explanation,

18

however, really explains nothing.  She merely generically states what security and

background checks are performed:  "When an alien applies for adjustment of status,

USCIS conducts several forms of security and background checks to ensure that the alien

is eligible for the immigration benefit and is not a risk to national security or public

safety. [. . .] These background checks currently include (1) a [FBI] fingerprint check for

relevant criminal history records on the alien; (2) a check against the DHS-managed

Interagency Border Inspection System (IBIS) [. . .]; and (3) an FBI name check."  *See*

Defendants' Ex. 2, ¶ 7.  Then, with respect to Plaintiff Baytiyeh, specifically, Ms. Gjelaj

merely states that, although the CIS has received the results from these checks, further

action or information *may* be required:

> 8.      Mr. Baytiyeh's fingerprints expired on or about May 23, 2012.  The
> fingerprint check (also called a biometric check) must be less than fifteen (15)
> months old at the time USCIS favorably adjudicates an adjustment of status.
> USCIS will have to schedule Plaintiff for a new fingerprint appointment once it
> completes its review before it can favorably adjudicate Mr. Baytiyeh's Adjustment
> Application.  The fingerprint results may, however, require subsequent action or
> information.

> 9.      USCIS conducted IBIS checks on Mr. Baytiyeh.  Results have been
> received and may require subsequent information.  IBIS checks require frequent
> updating.

> 10.      USCIS submitted the name check request to the FBI regarding Mr.
> Baytiyeh on or about April 3, 2009.  Results were received on or about June 4,
> 2009 and may require subsequent action or information.

*Id.* at ¶¶ 8-10.

Ms. Gjelaj offers no explanation as to why nothing has been done since May 2012

to obtain new fingerprints from Mr. Baytiyeh – and, of course, the fact that the prints are

expired is due in large part to the delay by CIS -- nor does she explain the more than four- year delay in completing the review of Baytiyeh's application since the FBI name check and IBIS results were received.  Merely stating that subsequent action or information *may* be required is tantamount to no explanation at all.

In light of the inordinate length of delay in adjudicating Mr. Baytiyeh's Application for Adjustment of Status, in order for the Court to make an informed decision as to whether the inaction of the USCIS should be treated as an abandonment or refusal to process the application, or whether there is a specific and justifiable explanation for the delay,

IT IS HEREBY ORDERED that the parties shall appear before the Honorable Gerald E. Rosen, Chief Judge, in his courtroom, Room 734 Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan 48226 on **Monday, September 9, 2013** at **11:30 a.m.** and **SHOW CAUSE** why the Court should not conclude that the USCIS has abandoned or refused to process Mr. Baytiyeh's Application for Adjustment of Status.  At this hearing, Defendants shall produce a representative of the USCIS to testify or provide information enabling the Court to make an informed decision on this matter.

**SO ORDERED**.

Dated:  August 29, 2013                    s/Gerald E. Rosen
                                            GERALD E. ROSEN
                                            CHIEF, U.S. DISTRICT COURT

20

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 29, 2013, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, 313-234-5135